## PURCHASE CONTRACT

Pursuant to this PURCHASE CONTRACT (the "Contract") entered into this ___14th___ day of April, 2011 between **Michigan Salt Products LLC** ("Seller"), principal place of business at 100 Engelwood Drive, Suite E, Orion, MI 48359, and **Scotwood Industries, Inc.** ("Buyer"), principal place of business at 12980 Metcalf, Suite 240, Overland Park, Kansas 66213 (collectively, Buyer and Seller being the "Parties," and each a "Party"), Seller agrees to sell and Buyer agrees to buy the materials described below (the "Goods") on the terms and conditions set forth below.

1. **GOODS.** The specifications of the Goods are as follows:

   | | | |
   |---|---|---|
   | Composition | Sodium Chloride (NaCl) | > 97.0% Pure Crystals |
   | | Moisture (dry basis) | < 3.0% |
   | | Insoluble Salts | < 0.9% |
   | | Ca | < 0.4% |
   | | Mg | < 0.4% |
   | | SO4 | < 2.0% |
   | | K | < 0.1% |
   | Size | Crystals, size range from 1.50 mm to 6.0 mm – a minimum of 90% of products shall meet this specification. | |
   | Quantity | 32,000 metric tons (+/- 10%) | |
   | Packaging | Bulk in ocean-going vessel, such vessel arranged by seller | |

2. **PRICE.** The unit price of the Goods is as follows:
   - as to BULK, US$67.75 per metric ton C.I.F. Final Destination (as defined below).

   The total price is US$2,168,000.00 ("Total Purchase Price"), which includes the requirement that Seller pays charges for packing, freight, insurance, and handling and all applicable federal, state and local taxes and all duties and other costs payable on import. Seller acknowledges that the Goods will be shipped from Damietta, Egypt to the U.S. and that it shall be responsible for U.S. Customs declaration and clearance of the Goods upon their arrival at the U.S. port and any costs associated therewith.

3. **DELIVERY, SHIPMENT.** Time is of the essence. Subject to the terms of this Contract, the Goods shall be delivered by Seller C.I.F. Port of Coeymans, Coeymans, New York ("Final Destination") in mid May of 2011, but in no event later than May 30, 2011. Seller acknowledges that it is aware of the time limits for delivery set forth above and that failure of Seller to make delivery on time may cause Buyer to incur damages. Seller is responsible for any delays, and associated fees or charges, at the origin point of loading vessel. Discharge of vessel at Final Destination is to be at the rate of 7,500 metric tons per day until unloading of entire vessel is complete ("expected discharge duration"). Upon constructive placement of vessel at Final Destination, and after expected discharge duration, Buyer is responsible for up to US$10,500.00 per day for demurrage. However, Seller is aware that Final Destination will not unload vessel during any event(s) of precipitation and such event(s) will not count against expected discharge duration.

4. **INSPECTION.** All Goods delivered shall be subject to Buyer's right of inspection and rejection. Seller shall supply to Buyer a quality and quantity inspection report issued by the supplier in Egypt at the loading port in Damietta, Egypt within five (5) calendar days after the loading of the Goods. Seller also shall provide to Buyer reasonable notice and opportunity such that Buyer may fully inspect the quality and quantity of the Goods at the Final Destination within fifteen (15) calendar days after their arrival. Buyer shall be responsible for the costs of unloading the Goods from the vessel at the Final Destination. In case the quality or quantity of Goods is found to be not in conformity with the specifications set forth herein, at Seller's expense Buyer shall be entitled to screen the non-conforming Goods at a rate of $3.50 per short ton; reject the non-conforming Goods and the rejected Goods shall be held for no more than thirty (30) calendar days by Buyer for disposition by Seller; or returned to Seller at Seller's expense and risk. Buyer shall not be obligated to pay for any non-conforming Goods. Any claim for shortage of quantity shall be filed within ninety (90) calendar days after arrival of the

1534621.4A

## EXHIBIT "A"

Goods at the Final Destination and any other claims shall be filed by Buyer within the applicable statute of limitations. In case any defects in quality are discovered by Buyer after Buyer has made one or more installment payments as described below, Buyer shall be entitled to a full refund of the amounts paid for such defective Goods and such refund shall be sent to Buyer by check drawn at a U.S. bank within seven (7) calendar days after Buyer notifies Seller of such claim.

5. **INVOICING AND PAYMENT.** All invoices must be rendered in duplicate and sent to the address of Buyer indicated above. Seller agrees to attach proof of delivery to all applicable invoices. Except as otherwise provided herein, a deposit of 50% of Total Purchase Price (US$1,084,000.00) will be made by Buyer to Seller's account by April 15, 2011, with payment by Buyer of the remaining balance upon submission by Seller to Buyer of two original invoices, two original bills of lading, quality certificate (issued by SGS Egypt) and completion of draft survey. All payments shall be made by check drawn at a U.S. bank and be sent, via overnight courier, to the address of Seller indicated above.

6. **RISK OF LOSS.** Seller shall bear all risks of loss or damage until the Goods covered by this Contract are delivered to, inspected and accepted by Buyer at the Final Destination.

7. **WARRANTY.** Seller expressly warrants that the Goods to be supplied under this Contract shall conform to the specifications or other descriptions furnished or specified by Buyer and shall be of high quality, new and free from defects in material and workmanship. Seller further warrants that the Goods shall be merchantable, and shall be safe and appropriate for the purpose for which goods of that kind are intended. Seller further warrants that the Goods furnished hereunder shall be fit, suitable, proper and sufficient for Buyer's particular purposes. Seller further warrants that it conveys to Buyer such Goods in good title, free of any liens or other encumbrances or claims by any third party of infringement or violation of proprietary or other rights. The warranties provided for in this paragraph shall be in addition to those implied by or available at law and shall exist notwithstanding the acceptance by Buyer of all or a part of the Goods to which such warranties are applicable. The warranties provided pursuant to this paragraph shall survive delivery of the Goods, and shall not be deemed waived by Buyer due to its failure to discover defects, acceptance of the Goods or making payment therefor.

8. **GOVERNING LAW.** Because the Parties hereto do business in different jurisdictions, and because they wish to ensure that this Contract is construed in accordance with their intentions, they agree that this Contract shall be enforced, governed by and construed in accordance with the laws of the State of Kansas, including, without limitation, the Uniform Commercial Code as adopted by the State of Kansas, without giving effect to the principles of conflict of laws thereof.

9. **DISPUTE RESOLUTION, ARBITRATION.** Any dispute or claim arising out of or in connection with the execution, performance of interpretation of this Contract shall be resolved first through good faith negotiations between the Parties. If no resolution or settlement can be reached between the Parties, the disputes may be submitted to arbitration for final and binding resolution. Either Party may initiate such arbitration by delivery of a notice to the other Party. The arbitration shall be conducted in the City of Overland Park, State of Kansas, by one arbitrator appointed pursuant to the Commercial Arbitration Rules of the American Arbitration Association, as amended (the "AAA Rules"). The language of the arbitration shall be English. The decision made by the arbitrator shall be final and binding upon both Parties. The arbitration expense shall be borne by the losing Party, unless otherwise awarded by the arbitrator.

10. **JURISDICTION.** If any action is brought to enforce this Contract, Seller agrees that venue for such action shall be exclusively in the courts of the State of Kansas located in the Johnson County or the courts of the United States for the District of Kansas. The Parties hereby irrevocably waive any objection which either Party may now or hereafter have to the laying of venue of any actions or proceedings arising out of or in connection with this Contract brought in the courts referred to in the preceding sentence and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding has been brought in an inconvenient forum.

11. **INDEMNITY.** Seller shall indemnify, defend and hold harmless Buyer and its agents, subsidiaries, affiliates, parent, employees, insurers, assigns, successors and representatives from and against all expenses, costs (including reasonable attorney's fees and costs), losses, liabilities, damages, suits, proceedings, judgments, settlements, claims or demands of any kind or nature whatsoever, both consequential and incidental, as well as direct, arising out of, or occasioned by, or attributed to, or related to, in whole or in part, (1) the defects of any Goods covered by this Contract; or (2) Seller's performance or breach of any term, provision, warranty, representation or condition of this Contract; or (3) Seller's violation of any law, regulation, ordinance, order or other governing rule. Buyer shall have the right to employ counsel on its own behalf who shall have the right to participate in the defense of such suit or claim and whose fees and costs shall be paid by Seller.

12. **MISCELLANEOUS PROVISIONS.**

    A. **ENTIRE AGREEMENT.** This Contract constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersede any and all prior and contemporaneous understandings, agreements and communications, whether oral or written, pertaining to the same subject matter.

    B. **REMEDIES.** The rights and remedies of Buyer provided in this Contract shall not be exclusive and shall be cumulative and in addition to any other or further remedies provided in law or equity or in this Contract. Acceptance of the Goods by Buyer after inspection shall not release or discharge Seller's liability for damages or other claims, including but not limited to breach of promise or warranty, expressed or implied, with respect to the Goods covered by the Contract.

    C. **ASSIGNMENT, AMENDMENT.** Seller shall not assign or transfer this Contract or any rights or obligations hereunder, or any portion thereof, without the prior written consent of Buyer. No agreement or other understanding in any way purporting to modify the terms and conditions hereof shall be binding upon Buyer unless made in writing and signed by Buyer's authorized representative.

    D. **SEVERABILITY.** In the event any provision of this Contract or any portion thereof is declared invalid or unenforceable by a court or tribunal of competent jurisdiction, that provision or the portion thereof shall be deemed severed from this Contract and the remaining provisions of this Contract shall remain valid, binding and enforceable.

    E. **WAIVER.** No waiver by Buyer of any breach by Seller of any provision of this Contract shall constitute a waiver of any other breach of such provision or of any breach of any other provisions hereof.

    F. **HEADINGS, COUNTERPARTS.** The section headings contained in this Contract are inserted for convenience only and shall not affect in any way the meaning or interpretation of the Contract. This Contract may be executed in one or more counterparts, each of which shall be deemed an original and shall be effective as of the date of execution of this Contract, but all of which taken together shall constitute one and the same instrument.

    IN WITNESS WHEREOF, the Parties hereto have caused this Contract to be executed by their duly authorized officers on the date set forth hereinabove.

| MICHIGAN SALT LLC | SCOTWOOD INDUSTRIES, INC. |
|---|---|
| By: _____ | By: _____ |
| Name: Andrew Lindamood | Name: Chase Wilson |
| Title: President | Title: President |