# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTWOOD INDUSTRIES, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> MICHIGAN SALT PRODUCTS, LLC; ) <br> E.C.O., S.P.R.L.; GHADAN COMPANY; ) <br> and AHMED LOTFY ZAKARYA COMPANY, ) <br> ) <br> Defendants ) | Case No. 11-CV-2542 |

## ANSWER AND CROSS-CLAIMS OF DEFENDANT, MICHIGAN SALT PRODUCTS, LLC

Defendant, Michigan Salt Products, LLC ("Michigan Salt"), as and for its Answer and Cross-Claims in the above-captioned action, states:

1. Admits the allegations set forth in Paragraphs 2, 6, 9 and 21 of the Complaint.

2. Denies each and every allegation set forth in Paragraphs 7 and 27 of the Complaint.

3. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 1, 3, 4, 5, 10, 23, 24, 25 and 26 of the Complaint.

4. Admits that Michigan Salt entered into a contract with Scotwood for the purchase and sale of bulk sea salt, refers the Court to the referenced document for knowledge of its contents, and denies the remaining allegations set forth in Paragraphs 8, 11, 12, 13 and 15 of the Complaint.

5. Admits that Michigan Salt paid Defendant E.C.O. s.p.r.l. in full for the referenced shipment of bulk sea salt delivered to the Port of Coeymans, and demanded that Defendants

furnish the original bills of lading for said fully-paid shipment; admits that the other Defendants failed or refused to release the original bills of lading to Michigan Salt notwithstanding said payment and demand; admits that a dispute has arisen between Michigan Salt and Defendants with respect to their failure to furnish the bills of lading; admits that a dispute has arisen between Michigan Salt and Defendant E.C.O. s.p.r.l. regarding breach of contract by E.C.O. s.p.r.l., as set forth in greater detail in the cross-claim herein; refers to the contract between Michigan Salt and E.C.O. s.p.r.l. for knowledge of its contents; and denies knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraphs 14, 17, 18 and 19 of the Complaint to the extent that they refer to acts or omissions of the other Defendants; and denies each and every remaining allegation set forth in Paragraphs 14, 17, 18 and 19 of the Complaint..

6. Admits that Scotwood and Michigan Salt agreed that Scotwood would pay a reduced price for the referenced salt shipment, and that Scotwood continues to owe Michigan Salt $400,000 of that reduced price, and, except as so admitted, denies the allegations set forth in Paragraph 16 of the Complaint.

7. Admits that it filed the lawsuit referred to in Paragraph 20 of the Complaint, refers the Court to the pleadings therein for knowledge of their contents, and denies each and every remaining allegation set forth in Paragraph 20 of the Complaint.

8. Admits that the disputes between Michigan Salt and the remaining Defendants have not been resolved, and except as so admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint.

### AS AND FOR A FIRST CROSS-CLAIM AGAINST DEFENDANTS E.C.O. S.P.R.L, GHADAN COMPANY AND AHMED LOTFY ZAKARYA COMPANY FOR JUDGMENT AWARDING THE SUBJECT SUM OF $400,000 TO MICHIGAN SALT.

9. Michigan Salt is in the business of selling road salt products in the United States.

10. On or about April 8, 2011, Michigan Salt entered into a contract with E.C.O. (the "E.C.O. Contract"), under which E.C.O. agreed to supply 150,000 metric tons (plus or minus 10%) of Egyptian raw white sea salt in bulk in shipments of between 30,000 and 65,000 metric tons at a price of $29.00 U.S. per metric ton. The 30,000 metric ton delivery was a test shipment.

11. The E.C.O. Contract required the salt to meet certain specifications with a permitted variation of plus or minus ten percentage points, to wit: (a) moisture (dry base) of less than 3%; (b) insoluble salt content of less than 0.9%; (c) calcium (Ca) content of less than 0.4%; (d) magnesium (Mg) content of less than 0.4%; (e) sulfate (SO4) content of less than 2%; (f) potassium (K) content of less than 0.1%; (g) with grain size variation (gradation) limited to between 1.5 millimeters and 6 millimeters; and (h) with a sodium (NaCL) content of more than 97%.

12. The E.C.O. Contract provided that the salt shipments would be made from New Port, Damietta Egypt.

13. The E.C.O. Contract provided that E.C.O would be liable for demurrage charges at the port of shipment arising from problems or delays with the loading of the vessel, except for demurrage charges arising from force majeure events, such as natural disaster, earthquakes, hurricanes, floods, tornados, fires, or wars, riots or other major upheavals.

14. The E.C.O. Contract provided that E.C.O. was responsible to have an analysis of the salt performed by SGS, an independent laboratory, at the time the salt was to be loaded, and to provide an SGS-certified report on salt sieve sizing, moisture content and a draft survey of the remaining constituents before Michigan Salt would be responsible to pay.

15. The E.C.O. Contract provided that Michigan Salt would pay E.C.O. 35% of the contract price upon execution of the Contract; 25% at the beginning of the loading; and 40% against the following documents: (a) a page labeled Document Two of the seller's invoice; (b) two original Bills of Lading; and (c) a quality certificate issued by SGS provided by E.C.O. to Michigan Salt, showing the salt to meet the Contract specifications, and including the draft survey, sieve size of the salt loaded onto the ship, and moisture content test result.

16. The E.C.O. Contract identified the following as E.C.O.'s bank and account: BNP Paribas Fortis, Avenue Joseph Abras, No. 76 5001, Belgrade, Belgium, Swift Code GEBABEEB, Account Number IBAN: BE30001581169011.

17. E.C.O. contracted with Ghadan Company for Marketing, Management and Commerce ("Ghadan"), a company in Damietta, Egypt, for the supply of the salt to Michigan Salt.

18. On or about April 14, 2011, Michigan Salt entered into a contract with Scotwood ("Scotwood Contract") for the sale and purchase of 32,000 metric tons (plus or minus 10%) of sea salt in bulk, to be delivered by May 30, 2011 by ocean going vessel arranged by Michigan Salt from Damietta, Egypt to the Port of Coeymans, New York at a price of $67.75 per metric ton.

19. The Scotwood Contract set forth certain specifications for the quality of salt to be delivered.

20. On or about April 8, 2011, Michigan Salt chartered with the freight shipping line of Lauritzen Bulkers A/S ("Lauritzen Bulkers") to transport 29,350.00 metric tons of the foregoing salt cargo from the port of Damietta, Egypt to the Port of Coeymans, New York at a freight charge of $25.50 U.S. per metric ton.

21. The foregoing 29,350.00 metric tons of bulk salt was consigned as follows:

(a) Ghadan caused Marine Ind. & Transit Co., care of Ahmed Lotfy Zakarya, to consign to order the following cargo placed in the custody of Lauritzen Bulkers for shipment on the vessel M/V Maren Bulker to the Port of Coeymans, New York: 13,735.997 metric tons of sea salt in bulk under Bill of Lading No. LBUL36591103001, issued at Damietta, Egypt on May 7, 2011 (hereinafter "Bill of Lading No.1").

(b) Ghadan caused Marine Ind. & Transit Co., care of Ahmed Lotfy Zakarya, to consign to order the following cargo in the custody of Lauritzen Bulkers for shipment on the vessel M/V Maren Bulker to the Port of Coeymans, New York: 8,061.180 metric tons of sea salt in bulk under Bill of Lading No. LBUL365911030002, issued at Damietta, Egypt on May 7, 2011 (hereinafter "Bill of Lading No. 2").

(c) Ghadan caused Marine Ind. & Transit Co., care of Ahmed Lotfy Zakarya, to place the following cargo in the custody of Lauritzen Bulkers for shipment on the vessel M/V Maren Bulker to the Port of Coeymans, New York: 7,552.823 metric tons of sea salt in bulk under Bill of Lading No. LBUL365911030003, issued at Damietta, Egypt on May 7, 2011(hereinafter, "Bill of Lading No. 3").

22. Upon information and belief, under the terms of shipment, three originals of each of the foregoing three Bills of Lading were to be presented to E.C.O.'s bank, BNP Paribas Fortis, in exchange for payment on behalf of E.C.O. under the contract between E.C.O. and Ghadan.

23. E.C.O. would then present documents set forth in paragraph 14 above to Michigan Salt, and Michigan salt would present the foregoing three Bills of Lading to Lauritzen Bulkers, which would then instruct the Master of M/V Maren Bulker to discharge the salt cargo at the Port of Coeymans, New York, into the possession of Michigan Salt.

24. The salt purchased by E.C.O. from Ghadan for Michigan Salt did not comply with the specifications of the E.C.O. Contract.

25. E.C.O. failed to cause Ghadan to conduct the testing required by the E.C.O. Contract.

26. E.C.O. failed to provide Michigan Salt with a quality certificate issued by SGS laboratory as required by the E.C.O. Contract.

27. The failure or refusal of E.C.O. to conduct said testing and to furnish the foregoing quality certificate caused delays in the loading of the shipments of salt onto the M/V Maren Bulker.

28. E.C.O. further failed to make the complete shipments of salt available for loading upon the M/V Maren Bulker in a timely fashion when the ship arrived at Damietta, Egypt for loading on or about April 26, 2011 at 1742 hours.

29. Due to the failure of E.C.O. to make complete shipments of salt available for loading in a timely fashion, it took eleven days, until May 7, 2011 at 2000 hours to complete loading of the vessel.

30. Said delays in loading the shipments of salt caused Michigan Salt to incur $59,368.75 U.S. in demurrage charges invoiced by Lauritzen Bulkers, which charges Michigan Salt paid in full.

31. M/V Maren Bulker eventually sailed from Damietta, Egypt on or about May 8, 2011 with the shipments of salt bound for the Port of Coeymans, New York.

32. M/V Maren Bulker arrived at the Port of Coeymans, New York on or about May 25, 2011 with the shipments of salt and cleared customs on or about May 26, 2011.

33. Michigan Salt paid Lauritzen Bulkers in full for the freight and demurrage charges invoiced with respect to the shipments of salt.

34. Michigan Salt had the cargo surveyed and determined that the salt shipment failed to meet the specifications of the E.C.O. Contract. Specifically, the grain sizes were not within the range specified by the E.C.O. Contract, and the SGS analysis required by the E.C.O. Contract was not furnished to Michigan Salt.

35. Nonetheless, Michigan Salt paid E.C.O. in full for the shipment while reserving all of Michigan's legal and contractual rights.

36. Specifically, Michigan Salt paid E.C.O. a total of $851,150 U.S., constituting the full payment under the E.C.O. Contract for 29,350 metric tons of salt at a price of $29 U.S. per metric ton, by wire transfer on the following dates in the following amounts: $304,500 on April 8, 2011; $217,500 on April 26, 2011, $152,715 on May 20, 2011, and $176,435 on May 25, 2011.

37. Upon Michigan Salt's full payment, E.C.O. was required by its contract to cause BNP Paribas Fortis release any and all holds on the original Bills of Lading so that Michigan Salt could obtain the necessary documents, including especially the Bills of Lading to take clear title to the salt.

38. E.C.O. failed to have BNP Paribas Fortis release the original Bills of Lading. Rather, it caused or permitted Ghadan to assert a purported "lien" against the Bills of Lading for non-payment.

39. Upon information and belief, BNP Paribas Fortis held and continues to hold two Bills of Lading of each of the three sets of original Bills of Lading in its custody.

40. That hold on the original Bills of Lading is unlawful.

41. Lauritzen Bulkers demanded the presentation of the original Bills of Lading held by BNP Paribas Fortis as a condition to its discharge of the salt cargo free and clear of liens to Michigan Salt.

42. Michigan Salt sent proof of full payment to BNP Paribas Fortis and to E.C.O., with a request that they release the hold on the original Bills of Lading.

43. E.C.O. nonetheless failed or refused to cause BNP Paribas Fortis to release its hold on the Bills of Lading so that Michigan Salt could receive delivery of the salt with clear title.

44. Upon proof of full payment directly furnished by Michigan Salt, Lauritzen Bulkers released the salt cargo into the custody of the Port of Coeymans, New York, but continued to maintain that the presentation of the original Bills of Lading was required for Michigan Salt to have clean title. Lauritzen also demanded undertakings and indemnity from Michigan Salt and the Port of Coeymans in the event of third-party claims arising from the release of the cargo.

45. The acts and omissions of defendants in their failure or refusal to release the original Bills of Lading to Michigan Salt have caused Michigan Salt to incur damages, including without limitation additional demurrage charges at the Port of Coeymans, New York in the amount of $6,500 U.S.

46. Upon receipt of E.C.O.'s partial payment, on or about June 8, 2011, Ghadan purported to release its "lien" against Bill of Lading No. 3 (7,552.823 metric tons of salt), but purported to maintain its "lien" against Bills of Lading Nos. 1 and 2.

47. Upon presentation of the purported "lien release", and with the approval of Lauritzen Bulkers, the Port of Coeymans released a portion of the salt shipment to Michigan Salt.

48. Scotwood represented to Michigan Salt that the salt did not meet the specifications of the Scotwood Contract, and demanded a discount off the contract price.

49. Under the Scotwood Contract, the price to be paid by Scotwood for 29,350 metric tons of salt delivered at $67.75 per metric ton was $1,988,462.50.

50. Scotwood made a deposit payment of $1,084,000 for the shipment.

51. Upon delivery of the salt to the Port of Coeymans, it was determined that the salt did not meet specifications.

52. Michigan Salt and Scotwood agreed to reduce the contract price under the Scotwood Contract for this shipment by an amount of $3.50 per ton, resulting in a total discount of $102,725 from the contract price, with the remaining amount due net of the deposit and demurrage fees of $6,180 totaling the sum of $795,257.50 due to Michigan Salt from Scotwood.

53. Scotwood made payment of $395,257.50 to Michigan Salt in partial payment of the agreed discounted contract price.

54. Scotwood took possession of the entire cargo of salt into its warehouse at the Port of Coeymans, New York, and thereafter bagged and removed portions of the salt cargo.

55. Despite demand therefor, Scotwood refused to pay Michigan Salt the remaining $400,000 of the agreed-upon discounted price on the ground that Michigan Salt was unable to deliver the salt with clean title due to the hold on the original Bills of Lading caused by the remaining Defendants, and described herein.

56. On or about August 2, 2011, Michigan Salt, though counsel, demanded that Scotwood pay Michigan Salt the subject $400,000.

57. Scotwood failed or refused to pay the subject $400,000.

58. Scotwood thereafter commenced this proceeding, relinquishing any claim to the $400,000 fund, and seeking adjudication of the Defendants' respective claims against the fund.

59. Michigan Salt is the full and unqualified owner of the subject fund in the amount of $400,000.

60. Defendants E.C.O., Ghadan Company and Ahmed Lotfy Zakarya Co. have no legitimate claim to or lien upon the subject fund in the amount of $400,000.

## AS AND FOR A SECOND CROSS-CLAIM AGAINST DEFENDANT, E.C.O. S.P.R.L FOR SPECIFIC PERFORMANCE

61. Michigan Salt repeats and realleges Paragraphs 9-60, as if fully set forth herein.

62. Michigan Salt fully performed its obligations under the E.C.O. Contract, including payment to E.C.O. in full and payment of all freight charges.

63. E.C.O. has a legal and contractual obligation to convey to Michigan Salt free title to the salt cargo for which Michigan Salt paid in full.

64. To convey free title, E.C.O. has a legal and contractual obligation to release or cause the release of the original Bills of Lading to Michigan Salt.

65. Upon information and belief, all prerequisites for the release of the original Bills of Lading have been met by Michigan Salt.

66. E.C.O. has failed or refused to release or cause the release of the original Bills of Lading.

67. The foregoing acts and omissions constitute a material breach of the E.C.O. Contract.

68. Michigan Salt has no adequate remedy at law as it will continue to be damaged in amounts not presently ascertainable if the Court does not immediately compel E.C.O. to release or cause the release of the Bills of Lading to Michigan Salt.

## AS AND FOR A THIRD CROSS-CLAIM AGAINST DEFENDANT E.C.O. S.P.R.L. FOR DAMAGES FOR BREACH OF CONTRACT

69. Michigan Salt repeats and realleges Paragraphs 9-68, as if fully set forth herein.

70. Michigan Salt fully performed its obligations under the E.C.O. Contract, including payment to E.C.O. in full and payment of all freight charges.

71. E.C.O. supplied salt that did not meet the specifications of the E.C.O. Contract.

72. E.C.O. failed to conduct the pre-shipment testing required by the E.C.O. Contract.

73. E.C.O. failed to furnish the quality inspection documentation required by the E.C.O. Contract.

74. E.C.O. failed to furnish the salt for shipment in a timely fashion, as required by the E.C.O. Contract.

75. E.C.O. failed to pay demurrage charges incurred by Michigan Salt as a result of E.C.O.'s delays in effecting shipment, which charges were payable by E.C.O. under the E.C.O. Contract.

76. E.C.O. failed supply salt with clean title, as required by the E.C.O. Contract.

77. E.C.O.'s acts and omissions detailed in this Complaint constitute material breach of the E.C.O. Contract.

78. As a direct result of E.C.O.'s breach of contract, Michigan Salt has sustained at direct and consequential damages (including lost profits), pre-judgment interest from at least May 30, 2011, and reasonable attorneys' fees and the cost of this action in an amount to be determined at trial but not less than $1,000,000.

## AS AND FOR A FOURTH CROSS-CLAIM AGAINST DEFENDANT E.C.O. S.P.R.L. TO COMPEL ARBITRATION

79. Michigan Salt repeats and realleges Paragraphs 9-79 as if fully set forth herein.

80. The E.C.O. Contract does not contain an enforceable provision requiring the parties to submit disputes under the E.C.O. Contract to arbitration.

81. In the alternative, in the event that the Court should determine nonetheless that the E.C.O. Contract does contain an enforceable arbitration provision, Michigan Salt is entitled to an order compelling E.C.O. to submit to arbitration in a venue convenient to Michigan Salt under arbitral rules to be determined by the Court.

WHEREFORE, Michigan Salt prays for an Order:

A. On the first cross-claim against Defendants E.C.O. s.p.r.l., Ghadan Company and Ahmed Lotfy Zakarya, awarding the subject $400,000 fund to Michigan Salt;

B. On the second cross-claim against Defendant E.C.O. s.p.r.l., compelling Defendant E.C.O. s.p.r.l. to release or cause the release of the subject Bills of Lading to Michigan Salt;

C. On the third cross-claim against Defendant E.C.O. s.p.r.l., awarding damages in an amount to be determined at trial, but not less than $1,000,000;

D. On the fourth cross-claim against Defendant E.C.O. s.p.r.l., in the event that this Court should determine that the E.C.O. contract contains an enforceable arbitration clause,

compelling Defendant E.C.O. s.p.r.l. to submit to arbitration in a forum convenient to Michigan Salt in accordance with arbitral rules to be determined by the Court; and

E. Granting such other and further relief as the Court deems just and proper.

Dated: November 1, 2011

Respectfully submitted,

/s/ Thomas A. Hamill
Thomas A. Hamill    KS #06554
MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, LLP
6900 College Blvd., Suite 700
Overland Park, Kansas 66212
Tel: (913) 491-5500
Fax: (913) 491-3341
tahamill@martinpringle.com
*Attorneys for Defendant*
*Michigan Salt Products, LLC*

Respectfully submitted,

/s/ Jean F. Gerbini, Esq.
Jean F. Gerbini, Esq.    NY #2035830
WHITEMAN OSTERMAN & HANNA LLP
One Commerce Plaza
Albany, New York 12260
Tel: (518) 487-7600
Fax: (518) 487-7777
jgerbini@woh.com
*Attorneys for Defendant*
*Michigan Salt Products, LLC*
*(Motion for Leave to Appear Pro Hac Vice Pending)*